[No. D027874. Fourth Dist., Div. One. Mar. 13, 1998.]

KATHY TAGGARES et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CAROLINE MITCHELL, Real Party in Interest.

[black redaction block]

**COUNSEL**

Meserve, Mumper & Hughes, Timothy A. Gravitt, David R. Eichten and Carol B. Burney for Petitioners.

Andrea R. Leavitt, Burkhardt & Larsen and Philip Burkhardt for Real Party In Interest.

**OPINION**

**WORK, Acting P. J.**—The issue before us involves a sua sponte court appointment of a privately compensated discovery referee to resolve an uncomplicated discovery dispute and all future ones which may arise, in which defendants were ordered to assume responsibility for all reference fees because plaintiff is indigent.

I

Trial courts utilize discovery references to reduce: the tension between contentious discovery disputants; burgeoning caseloads; and the perception that time constraints require directing judicial priorities elsewhere. Code of Civil Procedure[1] sections 639 and 645.1 provide the courts broad discretion to refer such disputes to a master for recommended disposition and to require the litigants to pay the cost incurred. Difficulty arises, however, where one party has the wherewithal to finance the reference and the other does not.

Here, the trial court summarily appointed a private discovery referee without ascertaining the financial status of either party, and ordered the cost to be divided equally. After learning plaintiff was indigent, the court purported to resolve their economic disparity by modifying its order to require the affluent defendants to pay the entire cost of the reference, "subject to further court order." The court stated it would consider future changes in the indigent party's financial status when crafting any "further court order." The

---

[1] All references are to the Code of Civil Procedure unless otherwise specified.

court specifically rejected a request that it consider an alternative other than imposing the total discovery cost on one party.

We conclude the court failed to comply with its duty under section 645.1 to order payment of the referee's fees in a manner which is "fair and reasonable." The significant factors of this case require the trial court to retain the discovery motions if one side cannot afford to pay anything and there are no available cost-free alternatives. For the following reasons, we issue our writ of mandate directing the superior court to vacate its order and to either retain the dispute or find a "cost-free" alternative.

## II

### FACTUAL AND PROCEDURAL BACKGROUND

Caroline Mitchell sued Kathy Taggares, KT's Kitchens, Inc., KT International and others for fraudulently advising her she could earn substantial passive monthly income if she purchased three high quality pizza machines. Mitchell mortgaged her home to buy the machines and supplies for $19,385, but the defective machines failed to provide anything approximating the income represented.

Mitchell sued for breach of contract, misrepresentation, conspiracy to defraud, unfair competition, violation of Racketeering Influenced and Corrupt Organizations Act (RICO), constructive fraud and negligence and other causes of action. Mitchell served form interrogatories (33 categories) and 4 sets of requests for production of documents.[2] When defendants did not respond to her satisfaction following an unsuccessful meet-and-confer, Mitchell moved to compel further responses.

Without consulting the parties, the court ordered this first motion *and all discovery disputes which might arise in the future* to Judicial Arbitration and Mediation Service (JAMS) with the parties to share the costs equally.[3] Mitchell's ex parte requests for oral argument and a stay of the reference pending inquiry into her indigence were granted.

The indigence hearing revealed Mitchell was an unemployed widow with three children who had lost her home as a result of inability to repay the loan for which she had pledged it as collateral for the pizza machine transaction. Her income consisted of $412.50 in monthly benefits as a result of her

---

[2]The first set of requests related to 63 categories of documents, the second set to 3 categories, the third set to 27 categories and the fourth set to another 3 categories.

[3]The court retained jurisdiction to award the costs at trial.

husband's death, $200 a month rent from her older son when he was not in school, and her younger son was receiving Social Security death benefits. The court determined Mitchell was indigent and ordered defendants to bear all costs of the JAMS referral subject to further court order.

Defendants do not argue Mitchell is not indigent, but challenge the trial court's authority to refer this initial, routine discovery request to a special master. Alternatively, they contend they should not be required to pay all costs of the referral where Mitchell's attorneys had agreed to advance the costs of litigation subject to her reimbursing them upon demand. We take judicial notice of the superior court file.

### III

### DISCUSSION

### A

■ In amending section 639 and enacting section 645.1 in 1981, the Legislature gave the trial courts broad discretion to employ private referees without the parties' consent, to assist in resolving discovery disputes.[4] Section 639, subdivision (e), provides: "When the parties do not consent, the court may, upon the application of any party, or of its own motion, direct a reference . . . [¶] . . . [¶] [w]hen the court in any pending action determines in its discretion that it is *necessary* for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon." (Italics added.)

The Legislature also authorized the courts to establish responsibility for the fee. Section 645.1 allows "[t]he court [to] order the parties to pay the fees of referees who are not employees or officers of the court at the time of appointment, as fixed pursuant to Section 1023, in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties." Section 1023 permits the court to set the referee's fees in a "reasonable sum . . . for the time spent in the business of the reference."[5]

Although the statutory language does not expressly limit a court's authority to refer by looking to the parties' respective financial ability, case law

---

[4]Before the changes in 1981, "all discovery was 'free'"—"[d]iscovery disputes were presided over and resolved by the trial courts." (*Solorzano* v. *Superior Court* (1993) 18 Cal.App.4th 603, 614 [22 Cal.Rptr.2d 401].)

[5]Section 1023 further provides ". . . the parties may agree, in writing, upon any other rate of compensation, and thereupon such rates shall be allowed." Although not an issue in this proceeding, we question whether section 1023 can have any nonconsensual effect on fees charged by private judges such as those to whom the parties were ordered here.

offers some guidance. In *Solorzano* v. *Superior Court, supra,* 18 Cal.App.4th 603, the trial court referred all discovery disputes to a referee and ordered indigent (in forma pauperis) plaintiffs to share equally in paying the referee's fee. The Court of Appeal determined the allocation was not fair and reasonable, explaining:

"Fees of $200 to $300 per hour charged by privately compensated discovery referees allow affluent litigants to avoid compliance by pricing enforcement of legitimate discovery demands beyond the means of indigent plaintiffs. This advantage based on wealth flows directly from the trial court's order imposing equal division of fees between indigent plaintiffs and an adverse litigant of far superior financial means.

"Section 645.1 makes no provision for indigent litigants proceeding in forma pauperis. However, such parties are by definition unable to pay court-ordered reference fees regardless of how they are allocated. That is, no division or allocation of hourly fees for the services of a privately compensated discovery referee that imposes a monetary burden on impecunious litigants can achieve the fair and reasonable goal of section 645.1. Therefore, based on the present record, we conclude section 645.1 does not constitute authority for the trial court to appoint a privately compensated discovery referee to resolve the instant dispute." (18 Cal.App.4th at pp. 614-615.)

In attempting to comply with section 645.1, the trial court has the responsibility to adopt a "fair means" of resolving disputes which takes into consideration the financial status of parties. (*Solorzano* v. *Superior Court, supra,* 18 Cal.App.4th at p. 616.) To that end, motions should be reviewed carefully to distinguish between those which should be retained and those appropriate for reference, and courts should consider appointing a pro bono referee or retired judge sitting by assignment, retaining the matter or other alternatives. (*Id.* at pp. 615-616.)

*McDonald* v. *Superior Court* (1994) 22 Cal.App.4th 364 [27 Cal.Rptr.2d 310], like *Solorzano*, involved a global discovery reference where the trial court required the parties to divide fees equally but indicated it would revisit the issue of allocation at a later time based on the referee's recommendation as to how fees should be allocated. Directing the lower court to vacate the allocation order, we concluded that a party need not be declared indigent before a court is obligated to consider whether it is reasonable to force parties to equally share costs of a special master. There, we held the trial court abused its discretion by failing to consider the financial impact of a reference on a party of "modest means" in deciding an apportionment under section 645.1. (22 Cal.App.4th at pp. 369-370.)

We further concluded the issue of allocation is one for the court—not the referee—and, when economic hardship is raised before the referee begins hearings, the court must reconsider the propriety of the reference and cost apportionment. (*McDonald* v. *Superior Court, supra,* 22 Cal.App.4th at p. 370.) "[T]o order the parties to bear fees equally until a referee recommends an allocation of fees and the court acts to change its order, at least in the short run, requires the 'modest means' litigant to pay the very fees it claims it cannot pay." (*Ibid.*)

In *DeBlase* v. *Superior Court* (1996) 41 Cal.App.4th 1279 [49 Cal.Rptr.2d 229], the trial court referenced a discovery motion over plaintiff's objection that she could not afford the fee, but reserved the determination of how much the referee would be paid and how the fee would be apportioned until it could hear argument on the matter and consider the master's recommendation.

The reviewing court rejected that approach, concluding once indigence was established, the trial court was required to promptly consider the claim of economic hardship. The reference order was also deemed improper because the motion did not raise complex or time-consuming issues, the document request and response were not voluminous and the court would soon hear a related motion. *DeBlase* v. *Superior Court, supra,* 41 Cal.App.4th 1279, discusses pertinent concerns affecting the propriety of ordering a reference and the allocation of costs. One factor cited, which is pertinent here, is whether the indigent party's costs are being advanced by her attorney.

## B

Defendants argue the amalgamation of holdings in *Solorzano, McDonald* and *DeBlase* precluded the trial court from referring this matter to a private discovery master once it found Mitchell was indigent. However, none of these cases expressly prohibits a reference on our facts. *Solorzano* and *McDonald* vacated allocations in which the trial courts required impoverished parties to pay half the fee. Here, the court attempted to protect Mitchell by ordering the financially able defendants to relieve her of any financial responsibility. *DeBlase* offers few factual parallels to the facts before us, based as it is on the lack of complexity of the motion and/or volume of paperwork, the fact that the reference was for one motion and related motions already were pending before the court.

## C

Defendants further argue the trial court failed to follow the direction of *Solorzano, McDonald* and *DeBlase* in that it did not attempt to fashion a

method to resolve the dispute without a private referral. Although defendants' initial position was that the trial court ordered the referral when faced with reams of paperwork and a perceived hostility between counsel, they, as well as Mitchell, now concede the discovery issues presented were routine and required no special expertise nor undue time consumption to resolve. Defendants note, however, they would not object to reference were the costs to be borne equally. However, they claim it is unfair to require them to subsidize Mitchell's discovery efforts, especially where her attorneys have specifically assumed the risk of advancing the costs of litigation as part of a contingency fee contract. (Citing *DeBlase* v. *Superior Court, supra,* 41 Cal.App.4th at pp. 1284-1285.)

To the extent the decision in *DeBlase* contains the offhand remark that, if counsel advances litigation expenses, "an avowal of the litigant's indigence may be viewed as nothing more than a request that the court minimize counsel's out-of-pocket expenses" (*DeBlase* v. *Superior Court, supra,* 41 Cal.App.4th at p. 1285), that is not legal precedent for ordering contingent fee counsel to advance costs of a private reference to which they and their clients object. We conclude the comment cannot be squared with the requirement in plaintiff's contingent fee contract that she reimburse counsel for costs advanced even if she does not prevail. Nor can requiring the referral fees to be paid by Mitchell's attorney be reconciled with the language of the statutes. Sections 645.1 and 1023 permit the court to order "the parties"—*not* counsel for the parties—to pay the referee's fees.

Requiring counsel to pay for references they do not request further invites a potential clash with the rule against direct or indirect payment of a client's personal or business expenses. (Rule 4-210(A), Rules of Prof. Conduct of State Bar.) Even though the rule excepts counsel's advancing "costs" (rule 4-210(A)(3), Rules of Prof. Conduct of State Bar), we question whether a private reference at the court's discretion is encompassed by the exception to the extent the cost of the reference is not an "allowable" item under section 1033.5 or waivable by the court (*Solorzano* v. *Superior Court, supra,* 18 Cal.App.4th at p. 614; *DeBlase* v. *Superior Court, supra,* 41 Cal.App.4th at p. 1285) and was not within the contemplation of the parties to the contract.[6]

In the final analysis, the proposition that a court may impose the cost of reference on an impoverished client's attorney raises equal protection, due process and fundamental fairness concerns in that it punishes poor litigants —those unable to afford retainers and hourly fees—by barring meaningful access to the courts through discouraging the availability of contingent fee counsel.

---

[6]Significantly, the fee agreement between buyer and her counsel does not require the attorneys to advance any particular cost.

## D

■ We turn to the issue of allocation. On its face, section 639, subdivision (e), authorizes a trial court to appoint a private referee without regard to a party's financial status. The related statute, section 645.1, also is silent on the issue of ability to pay. However, ordering the parties to "pay the fees of referees . . . in any manner [which is] determined . . . to be fair and reasonable," section 645.1 implies economic ability is a prime factor. The question then is whether the court complies with section 645.1 when it imposes the entire cost of the reference on an objecting affluent party when the opposing party is indigent. We conclude it does not.

The power to impose a reference on nonconsenting parties and require them to pay for easing the court's workload is a powerful tool in the court's arsenal: it permits the court to avoid massive paperwork, clear crowded dockets of repetitive and snarly motions, and can induce parties to take a more reasonable approach to discovery to keep costs from mounting.[7]
■ "When the Legislature amended section 639 and enacted section 645.1 in 1981, it obviously intended to give the overburdened trial courts the opportunity to utilize the paid expertise of retired judges in the resolution of complicated, time-consuming discovery disputes." (*Solorzano* v. *Superior Court, supra*, 18 Cal.App.4th at p. 614; see also *McDonald* v. *Superior Court, supra*, 22 Cal.App.4th at p. 369.) However, there is no suggestion the Legislature intended these powers to be used over the parties' objection in routine, pro forma, uncomplicated matters simply for expediency or a distaste for discovery resolution. Indeed, the statute gives the court this discretion when such a reference is *necessary*. (§ 639, subd. (e).)

We note, since the enactment of sections 639, subdivision (e), and 645.1, trial courts in our district have taken increasing control over pretrial proceedings with the advent of the independent calendaring system. Independent calendaring eliminates the traditional separation between the law-and-motion department and the trial department. It allows the court, which will actually try the action, to become truly conversant with the unique facts of the case before it, make all interim rulings and shape the trial issues and format. The discovery reference of uncomplicated motions is inconsistent with the goals of independent calendaring, anachronistic in such a system.

■ More to the point, the statutory framework is not a call for the court to abrogate judicial power. While the court may appoint a referee "to hear and determine any and all discovery motions . . . to report findings and

---

[7]Indeed, the trial court here exhorted the parties to resolve the dispute themselves to avoid the necessity for a referee.

make a recommendation" it is the responsibility of the court, not the referee, to make the final decision. (§ 639, subd. (e).) It is also the responsibility of the court, not the referee, to determine what manner of payment is "fair and reasonable" to the parties. (§ 645.1; *McDonald* v. *Superior Court, supra,* 22 Cal.App.4th at p. 370.) In performing its judicial function, the court must avoid even the appearance of unfairness: "[t]he justice system not only must be fair to all litigants; it must also appear to be so." (*Solorzano* v. *Superior Court, supra,* 18 Cal.App.4th at p. 615.)

Requiring these defendants to subsidize the cost of discovery by financing the entire reference is not shown to be "fair and reasonable" as required by section 645.1. Such an order is neither fair nor reasonable when it is based solely on one party's financial status, one who may be victorious in the discovery dispute and yet unable to recover the expense of obtaining discovery compliance from the other. Requiring a financially able party to bear the full cost of a private reference may also give rise to an appearance of unfairness when the rulings favor the party footing the bill. Most important, if only one party pays for the reference, there is a chilling effect on the exercise of that party's discovery rights and a corresponding disincentive on the opposing party to cooperate in resolving disputes among themselves with a modicum of outside intervention.

Here, without advance notice to the parties, the court ordered them to litigate this and all future discovery disputes with JAMS. While JAMS undoubtedly is a qualified service, it is only one of several competing private entrepreneurs in this market. We believe that even in cases where both parties agree to a reference, they always should be given the opportunity to select an acceptable referee. This not only avoids potential criticism arising from concerns that a court may routinely select a particular private service, but also permits the parties to agree on a referee whose fees, availability and/or expertise they perceive to be mutually favorable. (*Ante,* fn. 5.)

E

Unless both parties have agreed to a reference, the court should not make blanket orders directing *all* discovery motions to a discovery referee except in the unusual case where a majority of factors favoring reference are present. These include: (1) there are multiple issues to be resolved; (2) there are multiple motions to be heard simultaneously; (3) the present motion is only one in a continuum of many; (4) the number of documents to be reviewed (especially in issues based on assertions of privilege) make the inquiry inordinately time-consuming.

In making its decision, the trial courts need consider the statutory scheme is designed only to permit reference over the parties' objections where that

procedure is *necessary*, not merely convenient. (§ 639, subd. (e).) Where one or more of the above factors unduly impact the court's time and/or limited resources, the court is clearly within its discretion to make an appropriate reference.

On the other hand, certain factors will always militate against reference. Resolution of legal issues underlying discovery requests which are complex, unsettled or of first impression, lie peculiarly within the purview of the court. Further, where there are parties to the litigation who are not involved in these particular discovery proceedings, but who will be affected by the final rulings, it is the trial court which is best able to determine who these parties are and to what extent they may be affected, and best ensure they are properly noticed and their interests protected.

■ If it is determined the matter is appropriate for reference but one party is not reasonably able to finance private dispute resolution, the court should not refer unless it can do so without costs to that party. Possible options are: (1) If the parties agree, permitting them to select from a panel of attorneys who have agreed to serve pro bono in matters of this nature, or from a court-approved list of mediators and/or arbitrators willing to serve without charge; (2) require the parties to select from a court-approved list of retired judges willing to volunteer services in indigent cases; or (3) refer to the presiding judge for assignment to an available department or assigned judge.

■ We realize the workload demands on our trial courts often leave them little time to extensively review even routine discovery disputes, especially those requiring contested hearings. Courts are understandably reticent to put matters they consider more deserving on hold while they address issues which, except for counsels' intransigence, would be resolved without judicial intervention. In such cases, the temptation to divest itself of such judicial "pick and shovel" work can seem compelling. However, even in such cases, we conclude a court does not comply with section 645.1 when it imposes the entire cost of reference on one objecting party simply because the other party is indigent. Unless the court makes a cost-free option available to the parties, it may not order a reference in any such case. Instead, the trial court should retain and resolve these matters, when necessary utilizing available monetary sanctions and other judicial tools available to control discovery disobedience.[8]

Accordingly, we conclude the trial court here abused its discretion in ordering this discovery dispute and all future ones to JAMS on the condition defendants finance the entire cost of reference.

---

[8]This is, afterall, the court's only option where *both* parties lack the ability to pay fees of private referee.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its orders of December 16, 1996, and January 24, 1997, and enter a new order consistent with this opinion. The stay previously issued on May 8, 1997, is vacated. The parties to bear their own costs.

Benke, J., and Haller, J., concurred.