[No. B121570. Second Dist., Div. One. Nov. 24, 1998.]

ARIANNA TURNER, a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KAISER FOUNDATION HEALTH PLAN, INC., et al., Real Parties in
Interest.

COUNSEL

Nathaniel J. Friedman for Petitioner.

No appearance for Respondent.

La Follette, Johnson, De Haas, Fesler & Ames, Mark B. Guterman, Arnold & Porter, Lawrence A. Cox, Kurt Fritz, Brian K. Condon and Hilary L. Adel for Real Parties in Interest.

OPINION

**VOGEL (Miriam A.), J.**—This is a medical malpractice action against a health care service plan in which the trial court granted the defendant's petition to compel arbitration. The plaintiff, in turn, asked the trial court to order the defendant to pay the fees charged by the plaintiff's party arbitrator. The trial court refused, and the plaintiff filed a petition for a writ of mandate, which we summarily denied. The plaintiff then filed a petition for review by the Supreme Court, which was granted, and the case was transferred back to us with directions to issue an order to show cause. We complied, and heard argument. ██ ██ As we will explain, the record is wholly insufficient to consider the issue raised by the plaintiff, and we again deny the petition.[1]

BACKGROUND

Arianna Turner, a minor acting through her mother (Wendy Turner) as guardian ad litem, sued Kaiser Foundation Health Plan, Inc., and its related entities for medical malpractice. At about the same time (March 1997), Arianna filed an application for a waiver of court fees and costs supported by a declaration in which Wendy checked a box on a Judicial Council form to show that she was then receiving financial assistance under the "Supplemental Security Income Program" and the "State Supplemental Payments Program." This is the *only* information in the record about Wendy's financial condition, and there is *nothing* in the record about Arianna's financial condition. We do not know the identity of Arianna's father or his income or assets, or whether Arianna has any other source of income. We do not know

---

[1]The Supreme Court's direction to issue an order to show cause is an order to hear argument and file an opinion, not an order to reach a different result. (*Bridgestone/Firestone, Inc.* v. *Superior Court* (1992) 7 Cal.App.4th 1384, 1389, fn. 4 [9 Cal.Rptr.2d 709]; see also *TRW, Inc.* v. *Superior Court* (1994) 25 Cal.App.4th 1834, 1843, fn. 5 [31 Cal.Rptr.2d 460]; *Mallett* v. *Superior Court* (1992) 6 Cal.App.4th 1853, 1863, 1875 [8 Cal.Rptr.2d 829].)

whether Arianna's parents are married to each other or at all. We do not know where Arianna resides.

Kaiser answered the complaint, and then filed a petition to compel arbitration pursuant to the Group Medical and Hospital Service Agreement accepted by Arianna's grandfather and through which Arianna had received the medical services at issue in this case.[2] The Agreement includes a provision for binding arbitration. With regard to the selection of arbitrators (the claimant and Kaiser each select a party arbitrator who together select a neutral arbitrator) and payment of the neutral arbitrator's costs, the Agreement provides that "Claimant and [Kaiser] each shall designate an arbitrator and give written notice of such designation to the other, and Claimant shall forward a check for $150 made payable to Kaiser . . . . This $150 will be deposited with [Kaiser's] $150 in a special account maintained by [a specified bank]. These funds provide the initial funds to pay the fees of the neutral arbitrator and expenses of arbitration as approved by him or her, which fees and expenses shall be borne equally by the parties. 'Expenses of arbitration' does not include counsel or witness fees or other expenses incurred by a party for his or her own benefit. Said account shall be replenished from time to time as directed by the neutral arbitrator. Within 30 days after these notices have been given and payments made, the two arbitrators so selected shall select a neutral arbitrator and give notice of the selection to Claimant and [Kaiser], and the three arbitrators shall hold a hearing within a reasonable time thereafter."

Arianna opposed the petition to compel arbitration. In the alternative, she asked that, "should arbitration be compelled, . . . the Court order, as a condition thereof, pursuant to Health & Safety Code [sections] 1373.19 and 1373.20, that . . . Kaiser pay the entire cost of the arbitration, as [Arianna] is a brain-damaged six-year old, and is indigent."[3] Wendy's supporting declaration states that she is Arianna's mother, that Wendy never agreed to arbitrate this case, and that Wendy "wants a jury trial, with a panel of [her]

---

[2]Michael Turner was the covered employee. His wife (Marianne) and daughters (Wendy and her sister) were covered dependents. Arianna (Wendy's child) was born at a Kaiser Hospital, at which time Arianna allegedly suffered the injuries that are the subject of these proceedings. As previously noted, the record does not include any information about Arianna's father.

[3]Undesignated section references are to the Health and Safety Code. Section 1340 et seq. covers Health Care Service Plans. Section 1373.19 covers the selection of arbitrators for binding arbitrations required by health care service plans. Subdivision (c)(1) of section 1373.20 provides that, "with respect to extreme hardship cases," the plan must contain "a provision for the assumption of all or a portion of [the claimant's] share of the fees and expenses *of the neutral arbitrator* . . . ." (Italics added.) An application to have the plan assume the fees of the neutral arbitrator must be decided by "*a neutral arbitrator* who is not assigned to hear the underlying dispute" and who is selected by the parties or, if they cannot

neighbors . . . to decide the questions of fact herein." Without any supporting evidence, Wendy simply concludes that "she is indigent as, of course, is her daughter . . . ." Since Kaiser wants arbitration, says Wendy, "Kaiser should be compelled to pay all costs of said arbitration." There was nothing in Wendy's papers about the "costs" of arbitration. The trial court apparently granted the petition to compel arbitration but did not rule on Arianna's cost-shifting request.[4]

In March 1998, Arianna filed a motion to compel Kaiser to pay all costs of her "party arbitrator" (not those of the neutral arbitrator as contemplated by section 1373.20). In a supporting screed that purported to be a declaration, Arianna's lawyer (Nathaniel Friedman) reminded the trial court that, over Arianna's "strenuous objection," arbitration had been compelled so that Arianna could not "present her case to a jury of her peers (which jury likely would have crucified Kaiser)." Thereafter, said Friedman, Arianna selected an attorney (Mark O. Hiepler) as her "Party Arbitrator. Mr. H[ie]pler required $2,500 a day for his services, a not unreasonable sum, considering that retired judges hire themselves out for as much as $800 an hour, the amount reportedly charged (and collected, no doubt) by the retired Chief Justice of California."[5] Friedman's declaration continued:

"[Friedman] made demand upon [Kaiser's] attorneys that [Kaiser] pay Mr. H[ie]pler's charges, pointed out that Kaiser had prevailed upon its choice of forum motion, and since the resolution of this case would be carried out in a forum not of [Arianna's] choosing, it was appropriate that . . . [Kaiser] pay the relatively nominal sums required by Mr. H[ie]pler. (It is also to be noted that any monies paid for attorneys' fees or arbitrator's fees, are, when

---

agree, by the method provided in section 1281.6 of the Code of Civil Procedure. (§ 1373.20, subd. (c)(4).)

[4] In the petition now pending before us, Arianna says that, on December 5, 1997, the trial court entered an order compelling arbitration and staying this action. The exhibit supposedly supporting this "fact" is a copy of an unsigned and unconformed order that appears to have been submitted by Kaiser at the time Kaiser filed its petition to compel arbitration.

[5] The comparison to "the retired Chief Justice of California" is not explained. Hiepler is a lawyer in Oxnard who "assists clients in obtaining medical treatments which are wrongfully denied by their HMOs and insurance companies." He has been practicing law for about 10 years. The arbitration of Arianna's claim will not involve a demand for treatment that was denied, which is Hiepler's self-proclaimed specialty. This is an action for damages arising from medical negligence that allegedly occurred at the time of Arianna's birth. Assuming Hiepler's competence and ignoring the gratuitous reference to the former Chief Justice, we have no way to gauge the reasonableness of Hiepler's fee of $2,500 per day. Arianna has not offered any evidence to show what is generally paid to party arbitrators or to suggest that Hiepler's fees are standard in his field. The only basis for comparison is the $150 deposit required by Kaiser to pay the fees of the neutral arbitrator, subject to replenishment if more is required. To state the obvious, there is a rather large gap between an occasional $150 on the one hand, and $2,500 per day on the other.

[Kaiser] fills out its federal income tax, 'reasonable and necessary business expenses,' and thereby absorbed by the taxpayers.) [¶] [Kaiser] refused."[6]

"[Friedman] determined to force [Kaiser's] hand on this issue. The only question was, would [Friedman] seek an order compelling [Kaiser] to pay [Arianna's] Party Arbitrator's charges from the Neutral Arbitrator, or from the Court. [¶] [Friedman] determined that the Court would probably expect a first application to be made to the Neutral Arbitrator [and s]uch a motion was made. . . . [¶] Meanwhile, [the Neutral Arbitrator, Jerome Berenson], having been nominated for three straight arbitrations became indignant when [Friedman] wrote, asking to be informed if there was any type of 'special relationship' between retired Judge Berenson and [Kaiser] and/or [Kaiser's] permanent Party Arbitrator, P. Theodore Hammond. [¶] Judge Berenson took great umbrage at any suggestion that 'he had any kind of special relationship,' and promptly resigned."[7] There is more of the same sort of hyperbole, none of which is relevant.

From a legal perspective, Arianna claimed there was no agreement to arbitrate. It followed, she said, that the order compelling arbitration was tantamount to a compelled discovery reference pursuant to Code of Civil Procedure section 639, and that Kaiser ought to be required to pay for her party arbitrator. Kaiser opposed the motion, contending that, even in cases of extreme hardship, its obligation was limited by statute to its duty to pay the claimant's share of the fees charged by the neutral arbitrator. (§ 1373.20.) The trial court denied the motion, finding that section 1373.20 does not obligate Kaiser to pay the fees and costs of the claimant's party arbitrator.

In April, Arianna filed a petition for a writ of mandate in which she asked us to compel the trial court to order Kaiser to pay her party arbitrator's fees. We reviewed the record, found it wholly inadequate to support Arianna's position, and summarily denied the petition. Arianna then filed a petition for

---

[6]Kaiser's lawyer responded promptly to Friedman's demand, enclosing an "Application for Waiver of Neutral Arbitrator's Fees and Costs (Petition In Forma Pauperis)" and asking Friedman to "return the executed Application as soon as possible" so that Kaiser could then "make a determination . . . whether to accept the Application or seek a separate hearing on the issue." The letter explains that the Application covers the neutral arbitrator's fees, not the claimant's party arbitrator, and that Kaiser did "not intend, unless so ordered, to pay [Arianna's] party arbitrator." Instead of completing and returning the application to show the basis for Friedman's demand for more than was offered by Kaiser or required by the statute, Friedman chose not to provide any financial information at all. Kaiser has nevertheless agreed to pay Arianna's share of the neutral arbitrator's fees.

[7]Judge Berenson served on the Ventura County Superior Court from 1962 to 1982, at which time he retired. There is nothing in the record to show what his charges would have been for his services as a neutral arbitrator or to substantiate Friedman's allegations.

review, which the Supreme Court granted and transferred the matter to us with directions to issue an order to show cause. ■ We complied.[8]

DISCUSSION

■ The only point raised in Arianna's petition is a claim that she should not be deprived of "the party arbitrator of her choice due to lack of resources with which to pay his required charges." She says that if "she is unable to pay the charges demanded by her choice of party arbitrator, *a fortiori* she is denied procedural due process." On a different record, she might be right. On this record, she is not entitled to relief. (*California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153 [43 Cal.Rptr.2d 693, 899 P.2d 79] [it is the petitioner's burden to establish entitlement to a writ].)

First, there is no factual basis for Arianna's assertion that she is not bound by the agreement to arbitrate. As noted above, Arianna was born at a Kaiser hospital because her mother (Wendy) is a covered dependent of an employee (Arianna's grandfather) of a company that provides coverage. We do not know whether the Kaiser plan was offered on a "take it or leave it" basis, or whether it was selected as one of several alternatives, or whether there are any other circumstances that might call into question the ability of this health care plan (or its provision for binding arbitration) to satisfy the minimum levels of integrity required by *Engalla* v. *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 984-986 [64 Cal.Rptr.2d 843, 938 P.2d 903]. Arianna does not contend the contract is invalid on its face, and we will not presume unconscionability. (*Id.* at p. 985.)

Second, the legislative policy of this state is that, absent an agreement to the contrary, arbitration costs are to be borne by the party incurring them. (Code Civ. Proc., § 1284.2 [each party must bear the fees and expenses incurred for the party's own benefit]; *Austin* v. *Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1815 [21 Cal.Rptr.2d 56].) In the case of binding arbitration provisions in health care service plans, the legislature has created an exception to that general rule for the costs of the *neutral arbitrator.* (§ 1373.20, subd. (c) [in cases of extreme hardship, the plan must assume all or a portion of the claimant's share of the fees and expenses of the neutral arbitrator].) Accordingly, Arianna is entitled to apply to Kaiser (directly or

---

[8]We summarily reject Arianna's assertion (voiced in an exceedingly intemperate letter from her lawyer to us) that our order to show cause was intended to invite a response from the trial court rather than Kaiser. As everyone familiar with writ procedure knows, the issuance of an order to show cause gives the real party in interest (Kaiser) the right to respond. (Cal. Rules of Court, rule 56(e); *Ng* v. *Superior Court* (1997) 52 Cal.App.4th 1010, 1016-1020 [61 Cal.Rptr.2d 49].)

through a neutral arbitrator who is not otherwise involved in these proceedings) for relief from her obligation to pay her share of the neutral arbitrator's fees, and a showing by her of extreme hardship would probably obligate the neutral arbitrator to grant her application. (§ 1373.20, subd. (c)(4).)

Third, Arianna has failed to make even that minimum showing. All we know about her is that her mother receives some form of state or federal financial assistance. We do not know if that is based on need or on Arianna's medical problems. We do not know anything about Arianna's father. Indeed, we do not know anything at all about Arianna or her family, or whether she would qualify for even the minimal cost-shifting required by section 1373.20.

Fourth, whatever merit there might be to a contention that an indigent claimant is entitled to greater protection than that provided by section 1373.20 when she is compelled to participate in binding arbitration and deprived of her right to a low or no cost jury trial, we cannot decide that issue in the abstract. We do not know Arianna's need. We do not know the reasonableness of her party arbitrator's proposed charges. We do not know the alternatives.

Fifth and finally, we do not see the present relevance of *Taggares* v. *Superior Court* (1998) 62 Cal.App.4th 94 [72 Cal.Rptr.2d 387], one of the cases relied on by Arianna in the trial court. In *Taggares,* Division One of the Fourth District imposed limits on the trial court's ability to sua sponte appoint a privately compensated discovery referee in cases where the plaintiff is indigent. In *Taggares,* the plaintiff presented evidence of her indigency—she was an unemployed widow with three children who was surviving on an income of about $600 per month, and who had lost her home as the result of her inability to repay the loan that was the subject of the underlying action. (*Id.* at pp. 99-100.) *Taggares* holds that the plaintiff's indigency does not justify an order shifting the cost of the reference to the defendant. Instead, said the Court of Appeal, the trial court should consider a laundry list of factors in deciding whether an involuntary reference is really necessary. If it is then determined that the "matter is appropriate for reference but one party is not reasonably able to finance private dispute resolution, the court should not refer unless it can do so without costs to that party. Possible options are: (1) If the parties agree, permitting them to select from a panel of attorneys who have agreed to serve pro bono in matters of this nature, or from a court-approved list of mediators and/or arbitrators willing to serve without charge; (2) require the parties to select from a court-approved list of retired judges willing to volunteer services in indigent cases; or (3) refer to the presiding judge for assignment to an available department

or assigned judge." (*Taggares* v. *Superior Court, supra,* 62 Cal.App.4th at p. 106.) *Taggares* addresses involuntary, non-consensual discovery references. On the state of the record before us, the arbitration provision is neither involuntary nor non-consensual. It is part of the contract accepted by Arianna's grandfather and it is binding on Arianna. (*County of Contra Costa* v. *Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242 [54 Cal.Rptr.2d 628] [minors are bound by a parent's agreement to arbitrate malpractice claims filed against a health care provider].)

Of course, we do see the relevance of *Taggares* to the fundamental issue of fees in compelled arbitrations. Upon a proper showing of indigency or extreme hardship and a concomitant showing that her chosen party arbitrator has a legitimate basis for his fees, and of the absence of an acceptable available alternative party arbitrator, or upon a showing that, as to her, the Kaiser contract does not afford the required minimum levels of integrity, Arianna *might* have the right to shift all or some portion of her party arbitrator's fees to Kaiser or, in the alternative, to avoid the arbitration provision and proceed instead with the jury trial she wants. On this record, however, the predicate factual determinations cannot be made and these legal issues cannot be decided.[9]

## DISPOSITION

The petition is denied. The parties are to pay their own costs of these writ proceedings.

Spencer, P. J., and Masterson, J., concurred.

Petitioner's application for review by the Supreme Court was denied March 9, 1999.

---

[9]Kaiser discusses the legislative history of section 1373.20, emphasizing the evolution of the proposed statute from one that initially included a cost-shifting provision for the benefit of indigent claimants to the one that was ultimately enacted. (See Sen. Bill No. 1660 (1995-1996 Reg. Sess.), as initially introduced on Feb. 21, 1996.) Although Arianna's record makes it impossible to consider the merits of her position, we note that a legislative intent to preclude party-arbitrator cost-shifting, no matter how well documented, is not by itself dispositive of the claimant's rights when the effect of the statute is to deny a claimant's access to both the courts and the arbitral process.