104 Cal.Rptr.2d 810 (2001)
87 Cal.App.4th 747
The TJX COMPANIES, INC., Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Cindy Burchard et al., Real Parties In Interest.
No. G027891.
Court of Appeal, Fourth District, Division Three.
March 6, 2001.
As Modified March 26, 2001.
Jackson, Lewis, Schnitzler & Krupman, Frank.M. Liberatore, Los Angeles, Kristin L. Cihak and Cary G. Palmer, Sacramento, for Petitioner.
No appearance for Respondent.
*811 Robert F. Coleman, West Covina, and James S. Davis, Rancho Cucamonga, for Real Parties in Interest.

OPINION
CROSBY, J.
The trial court subjected petitioner to the rigors of class action discovery without holding an oral hearing on petitioner's demurrer. There was a real and genuine dispute whether the complaint alleged facts sufficient to establish the elements necessary for maintenance of a class action, including a community of interest among the potential class members and a preponderance of common questions of law and fact when compared with those requiring separate adjudication. (See, e.g., Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 103 Cal. Rptr.2d 320, 15 P.3d 1071.) Trial judges may not summarily dispose of such critical pretrial matters. We hold the parties are entitled to an oral hearing before the court rules.

I
Defendant The TJX Companies, Inc. (TJX) owns and operates two large retail store chains in California, "T.J. Maxx" and "Marshalls." Plaintiffs Cindy Burchard and Maureen Jordan are TJX assistant managers in Orange County.
In February 2000, plaintiffs brought a statewide class action on behalf of TJX assistant managers in more than 150 retail stores to recover unpaid overtime. They alleged that TJX refused to pay overtime, even when its assistant managers performed such non-exempt tasks as waiting on customers, stocking shelves, and scrubbing toilets. They sought back pay, penalty wages, attorney fees, punitive damages, and a protective order against retaliation.
In July 2000, TJX demurred to the first amended complaint and moved to strike the claim for punitive damages. It argued common questions did not predominate because recovery depended on a quantitative examination of how the individual assistant managers actually spent their work time. This would splinter the lawsuit into "minitrials for each and every class member, thereby defeating any reasonable rationale for class certification."
Plaintiffs opposed the demurrer as premature because "the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation." They committed to promptly filing such a motion after completion of discovery regarding class certification.
A hearing on the demurrer was set for August 18, 2000, before Judge Robert Thomas. But two days before, the court clerk faxed a minute order ruling to the parties. Judge Fenton, sitting temporarily by assignment, overruled the demurrer and denied the motion to strike. The order ended with the notation, "Oral Argument will not be heard. [¶] Plaintiffs' counsel shall give notice."
TJX sought a writ of mandate. We issued an order to show cause and stayed all trial court proceedings pending our resolution of the issue. During arguments before this court, plaintiffs' counsel agreed that oral argument should have been allowed below.

II

A
Our starting point is the Supreme Court's decision in Lewis v. Superior Court (1999) 19 Cal.4th 1232, 82 Cal. Rptr.2d 85, 970 P.2d 872 (Lewis). Lewis analyzed the words and context of the statutes governing prerogative writs (Code Civ. Proc, §§ 1088, 1094) to determine whether the requirement that the case be "heard" called for oral argument. Lewis held the applicable statutes did not mandate oral argument because peremptory writs only issue in narrow circumstances to correct obvious errors. (Id. at pp. 1237, 1241, 1250, 82 Cal.Rptr.2d 85, 970 P.2d 872.) Since the outcome was clear, oral *812 argument was "unnecessary in this context" and "would amount to an empty gesture." (Id. at pp. 1258-1259, 82 Cal. Rptr.2d 85, 970 P.2d 872.) Lewis minimized its own impact. The court emphasized the "truly exceptional" nature of the accelerated procedure for peremptory writs where "[application of established law to undisputed facts ... leave[s] no room for doubt regarding the proper result." (Id. at p. 1261, 82 Cal.Rptr.2d 85, 970 P.2d 872.)
We have applied a Lewis-like analysis to require oral arguments in the following situations: summary judgments (Gwartz v. Superior Court (1999) 71 Cal.App.4th 480, 83 Cal.Rptr.2d 865; Mediterranean Construction Co. v. State Farm Fire & Casualty Co. (1998) 66 Cal.App.4th 257, 77 Cal. Rptr.2d 781 (Mediterranean)), pretrial writs of attachments (Hobbs v. Weiss (1999) 73 Cal.App.4th 76, 86 Cal.Rptr.2d 146 (Hobbs)) and, most recently, discovery motions regarding documents subject to the attorney-client privilege (Titmas v. Superior Court (2001) 87 Cal.App.4th 738, 104 Cal.Rptr.2d 803 (Titmas)).
In Mediterranean an insurance carrier sought summary judgment to establish that it had no duty to defend or indemnify a contractor in a construction defect lawsuit. (Mediterranean, supra, 66 Cal. App.4th at p. 261, 77 Cal.Rptr.2d 781.) We cited statutory requirements for the "time appointed for a hearing" and references to the making of evidentiary objections "at the hearing" to show the Legislature's intent. (66 Cal.App.4th at pp. 262-263, 77 Cal.Rptr.2d 781, citing Code Civ.Proc, § 437c, subds. (a), (d), italics added.)
Hobbs involved a critical matter in a commercial lease dispute, a creditor's attempt to freeze some of the debtor's assets during the litigationhardly a "`de minimis'" or "`insubstantial' ... deprivation." (Hobbs, supra, 73 Cal.App.4th at p. 79, 86 Cal.Rptr.2d 146.) We relied on the statutory prohibition against the issuance of pretrial writs of attachment "except after a hearing:" (73 Cal.App.4th at p. 78, 86 Cal.Rptr.2d 146, quoting Code Civ.Proc, § 484.040, italics added.) We noted the evidentiary issues at stake and the importance of giving both sides the opportunity to "directly confront the judge who will rule on the right-to-attach order, explain their position, and address the judge's concerns." (73 Cal.App.4th at p. 81, 86 Cal. Rptr.2d 146)
We glean from Lewis, Mediterranean, and Hobbs the following principles: The court should look to the words of the statute and apply their plain meaning, if there is one. (Lewis, supra, 19 Cal.4th at p. 1245, 82 Cal.Rptr.2d 85, 970 P.2d 872.) But where the statutes employ imprecise terms such as "heard" and "hearing," then we further analyze whether "the context or other language indicates a contrary intent." (Lewis, supra, 19 Cal.4th at p. 1247, 82 Cal.Rptr.2d 85, 970 P.2d 872.) In so doing we study the entire statutory scheme, reading the provisions in context and considering their nature and purpose. (Id. at pp. 1245, 1249-1250, 82 Cal.Rptr.2d 85, 970 P.2d 872.) Does the trial judge act as a fact finder or adjudicate any issues at the hearing? Are any procedural remedies (making evidentiary objections, orally moving for a continuance) provided for any of the litigants at the time of the hearing? Do the proceedings involve "critical pretrial matters of considerable significance to the parties...." (Mediterranean, supra, 66 Cal. App.4th at pp. 266-267, 77 Cal.Rptr.2d 781.)
Last, we consider the bona fides of the pending motion: Is there an authentic dispute, or are the issues so obvious or wellsettled that oral argument "would amount to an empty gesture"? (Lewis, supra, 19 Cal.4th at pp. 1258-1259, 82 Cal.Rptr.2d 85, 970 P.2d 872.)

B
The instant demurrer to the class action allegations provides a classic example of the type of critical pretrial proceeding for which oral argument is required. Both the statutory language and the legislative scheme compel the conclusion that an oral hearing is a necessary *813 component to attacks by demurrer on class action allegations and a summary disposition is impermissible.
We look first to the pertinent statutes. A party who demurs to a complaint is entitled to a "hearing" on a specified date. (Cal. Rules of Court, rules 303(c), 325(b).) The court is permitted to change the hearing date to an earlier or later day "on notice prescribed by the court," but nothing in the rules permits it to dispense with the hearing date altogether. (Cal. Rules of Court, rule 325(b).) The rules detail the procedure concerning rulings on demurrers when one or more parties fails to appear at "the hearing." (Cal. Rules of Court, rule 325(d).) With the exception of the tentative ruling procedure (where the court, by local rule, may adopt a tentative ruling procedure requiring parties to give advance notice of their intent to appear at oral argument), the rules are silent regarding decisions on the basis of the papers alone when the parties have not submitted. (Cal. Rules of Court, rules 324(a), 325(d).)[1]
We next consider the statutory context, particularly the role of demurrers as a screening mechanism for improperly pleaded class action allegations. The Supreme Court has recognized the role of early merit challenges in "weeding out legally meritless [class] suits prior to certification...." (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 440, 97 Cal.Rptr.2d 179, 2 P.3d 27.) According to Linder, the "interests of fairness and efficiency" are furthered when courts hold hearings on demurrers or dispositive early motions to scrutinize "a proposed class cause of action to determine whether, assuming its merit, it is suitable for resolution on a classwide basis. Indeed, issues affecting the merits of a case may be enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses." (Id. at p. 443, 97 Cal.Rptr.2d 179, 2 P.3d 27.) While class actions provide a necessary remedy to "large numbers of people [who have been harmed] in small amounts instead of small numbers of people in large amounts," they have the potential to promote injustice as well. (Id. at p. 446, 97 Cal.Rptr.2d 179, 2 P.3d 27.)
In Brown v. Regents of University of California (1984) 151 Cal.App.3d 982,' 198 Cal.Rptr. 916, the court affirmed the dismissal on demurrer of a class action lawsuit by patients of a medical center's coronary care center for failure to disclose an abnormally high mortality rate. Notwithstanding the public policy favoring class actions, the court found too many diverse issues to sustain class status, even at the pleading stage. The court stated, "In our *814 review of the complaint at issue, we have determined that individual issues substantially predominate over common questions." (Id. at p. 989, 198 Cal.Rptr. 916.)
Other cases are in accord. (See also Canon U.S.A., Inc. v. Superior Court (1998) 68 Cal.App.4th 1, 5, 79 Cal.Rptr.2d 897 [where complaint demonstrates need for individualized inquiry, class allegations should be disposed of at the pleading stage to avoid "the expense of an evidentiary hearing or class-related discovery"]); (Silva v. Block (1996) 49 Cal.App.4th 345, 349, 56 Cal.Rptr.2d 613 ["trial courts properly and `routinely decide[ ] the issue of class certification on demurrer, sustaining demurrers without leave to amend where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact'"]; Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1234, 271 Cal.Rptr. 72 [`Where a complaint, on its face, fails to allege facts sufficient to establish a community of interest as to the elements of the class claims, it would be a waste of time and judicial resources to require a full evidentiary hearing when the matter can properly be disposed of by demurrer"].)
Here, plaintiffs have estimated that the number of potential class members exceeds 300 people. This means that TJX may be subjected, in its words, to "a lengthy, unmanageable class proceeding," including individual depositions of hundreds of potential class members, which may ensue even before a class is certified. The process of deciding whether to certify a class may pose substantial costs because of the burdensome discovery necessary for the class certification hearing. (Bartold v. Glendale Federal Bank (2000) 81 Cal. App.4th 816, 836, 97 Cal.Rptr.2d 226 ["A party is entitled to such discovery before the class is certified, not after"].) We do not decide this issue, but it is a legitimate one.
Because there is a real and genuine dispute, we cannot conclude that oral argument on TJX's demurrer would be an "empty gesture." (Lewis, supra, 19 Cal.4th at p. 1259, 82 Cal.Rptr.2d 85, 970 P.2d 872.) Plaintiffs do not even argue that a court hearing would be a mere formality. Rather than expressing an opinion on the merits, we return this case to the superior court to conduct the oral hearing that is a key element of due process.

C
Some final observations: Oral argument is central to our common law heritage where judicial officers generally issued oral opinions from the bench at the conclusion of each case. It is a tradition well worth preserving even in a word processing era of electronic cut-and-paste pleadings and motions.
We take literally Justice Frankfurter's admonition that "justice must satisfy the appearance of justice." (Offutt v. United States (1954) 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11; see also Taggares v. Superior Court (1998) 62 Cal.App.4th 94, 105, 72 Cal.Rptr.2d 387 ["In performing its judicial function, the court must avoid even the appearance of unfairness: `The justice system not only must be fair to all litigants; it must also appear to be so'"].) It is wise public policy to conduct judicial proceedings in the sunshine, unless there is a very good reason not to do so. (Mediterranean, supra, 66 Cal.App.4th at pp. 264-265, 77 Cal.Rptr.2d 781.) The convenience of trial judges is not such a reason.
Speaking and listening are critical to clear-headedness. Indeed, they may even lead to better writing, as one commentator has urged: "Lawyers are, on the whole, interesting people who can talk without putting you to sleep. So why are we so dull and pompous on paper? Why do we write things ... that would make us laugh if someone spoke them? [¶] ... [¶] Hearing your words will steer you away from absurdities." (Posner, Writing in a Flat World (Feb.2001) 21 Cal.Law. 27-28.)
*815 Our own experience with appellate argument confirms its utility. Oral argument may lift up the fallen or cause the tottering to fall. It separates the wheat from the chaff by affording "a direct dialogue between the litigant and the bench ... in ways that cannot be matched by written communication, and for many judges a personal exchange with counsel makes a difference in result." (Lewis, supra, 19 Cal.4th at p. 1255, 82 Cal.Rptr.2d 85, 970 P.2d 872.)
We find too many lawyers willing to write what they are unwilling to say. This may lead to considerable backpedaling at oral argument, but sometimes reversing direction is the right way to go. Oral argument can clear the air.[2] The court's cross-examination of the attorneys is often as effective as a catalytic converter.
Moreover, although this case was in an early stage, an oral hearing should have been held because the judge who was to rule on the motion was an unannounced substitute for the assigned judge. Allpurpose assignments are pragmatically designed to allow one judge to absorb the complexities and intricacies of any given case "`so that the time of litigants, counsel and the superior court need not be wasted in the repetitive education of successive judges....'" (People v. Superior Court (Lavi) (1993) 4 Cal.4th 1164, 1179, 17 Cal.Rptr.2d 815, 847 P.2d 1031.) The allpurpose judge acquires "`an expertise regarding the factual and legal issues involved'" that adds confidence to the litigants and accelerates the legal process. (Ibid.) Hearing oral argument is one of the best way we know for substitute judges to demonstrate to the satisfaction of the parties and the public that judicial responsibility has been exercised rather than abdicated. (Rose v. Superior Court (2000) 81 Cal.App.4th 564, 575, 96 Cal.Rptr.2d 843.) Simply put, justice unseen is justice undone.
In summary, we strongly recommend that trial judges, when in doubt, afford litigants the benefit of oral argument because that is precisely when oral argument may be most beneficial. (See Titmas, supra, 87 Cal.App.4th 738, 104 Cal.Rptr.2d 803.) Perhaps Yogi Berra said it best: "`You [can] observe a lot by watching.'" (The Jurisprudence of Yogi Berra (1997) 46 Emory L.J. 697, 701, quoted in Manfredi & Levine v. Superior Court (1998) 66 Cal.App.4th 1128, 1136, 78 Cal.Rptr.2d 494.)
Let a peremptory writ of mandate issue directing respondent court to vacate its order denying petitioner's motion to strike and overruling its demurrer, and hold an oral hearing on those issues in conformance with the views expressed in this opinion. Our previously ordered stay is dissolved upon return of the remittitur. No costs are awarded for this interim proceeding, but may be allowed to the party ultimately prevailing in the discretion of the superior court.
SILLS, P.J., and O'LEARY, J., concur.
NOTES
[1] Rule 324(a) provides in pari: "A trial court that offers a tentative ruling procedure in civil law and motion matters shall follow one of the following procedures: [¶] (1) The court shall make its tentative ruling available by telephone ... by no later than 3:00 p.m. the court day before the scheduled hearing.... II the court [in its tentative ruling] has not directed argument, oral argument shall be permitted only if a party notifies all other parties and the court by 4:00 p.m. on the court day prior to the hearing of the party's intention to appear.... The tentative ruling shall become the ruling of the court if the court has not directed oral argument by its tentative ruling and notice of intent to appear has not been given. [¶] (2) The court shall make its tentative ruling available by telephone ... by a specified time prior to the hearing.... This procedure shall not require the parties to give notice of intent to appear.... The tentative ruling, or such other ruling as the court may render, shall not become the final ruling of the court until the hearing."

Rule 325(d) provides, "When a demurrer is regularly called for hearing and there is no appearance by one parly, the demurrer shall be disposed of on the merits at the request of the party appearing unless for good cause the hearing is continued. Failure to appear in support of a special demurrer may be construed by the court as an admission that the demurrer is not meritorious and as a waiver of all grounds thereof. If neither party appears, the demurrer may be disposed of upon its merits or dropped from the calendar, to be restored upon notice or upon terms as the court may deem proper, or the hearing may be continued to a time as the court shall order."
[2] Here, for example, plaintiffs' counsel expressly acknowledged the propriety of a writ (on the procedural issue) during oral argument, a step he had not taken in his written submissions.