[No. A033257. First Dist., Div. Five. July 8, 1987.]

ANITA LESLIE STEPHENS, Plaintiff and Appellant, v.
MONTGOMERY WARD et al., Defendants and Respondents.

414

---

COUNSEL

Joan Graff, Robert Barnes, Chris Redburn and Margaret A. Gannon for Plaintiff and Appellant.

Peter W. Davis, Michael J. Loeb, Ezra Hendon and Crosby, Heafey, Roach & May for Defendants and Respondents.

**OPINION**

**LOW, P. J.**—Plaintiff Anita Leslie Stephens appeals from an order denying class certification in this action charging defendant Montgomery Ward and several of its managerial employees (collectively referred to as Wards) with sex discrimination in violation of California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). Specifically, Stephens seeks to represent a class of women who have been excluded from holding managerial positions in certain sales departments and other upper management positions. We conclude the named plaintiff has not been shown to be qualified as a class representative. However, in all other respects, the requirements for maintaining a class action are satisfied.

Stephens has worked for Wards for over a decade. She alleges that since 1979 she has been qualified and available to serve as a manager of a "reserve" department, but has not been promoted because of her sex. "Reserve" departments are certain retail departments which plaintiff alleges are reserved by Wards for male managers. These departments include: sporting goods, auto parts, truck tires, building materials, paint, plumbing supplies, electrical supplies, television-stereos, stoves, refrigerators, hardware, a garden shop, and sewing machines. Stephens claims "reserve" department managers receive higher pay than managers of other departments and that upper management are recruited from within these departments. In June 1974, Stephens was promoted to building materials department manager, a department she classifies as "reserve." She served successfully in that position until she voluntarily left the company in June 1975. Stephens returned to Wards in 1976, and in 1978 was promoted to department manager of the combined departments of sporting goods and bicycles. However, in the latter part of 1979 Stephens was removed from this position for failing to meet specified management goals. She returned to a sales position, where she remains.

Believing she had been unfairly demoted from her department manager position, Stephens filed a complaint against Wards with the federal Equal Employment Opportunity Commission (EEOC) and the state Department of Fair Employment and Housing. After an investigation, the EEOC found reasonable cause to believe that Wards "has violated Title VII of the Civil Rights Act of 1964 by discriminating on the basis of sex against [Stephens] and women as a class with respect to assignment to jobs as hard line manager, and resulting compensation; recruitment; initial job assignment; training; promotion; and demotion." This conclusion was based on the EEOC's findings that Stephens was given inadequate support from management during her brief tenure as department manager in sporting goods. The EEOC also found Stephens was held to higher standards than male depart-

ment managers in similar departments. More pertinent to our inquiry herein, the EEOC found "evidence that [Wards] is and has been discriminating against women as a class in all Northern California Metro District stores by denying them, through sex-based recruiting, job assignment and promotions, the opportunity to become department managers and/or sales managers in hard line and/or big ticket departments, with resulting discrimination in their compensation for work equal or comparable to that performed by male department managers and/or sales managers."

Stephens filed a complaint in superior court alleging Wards had discriminated against her on the basis of gender in a manner prohibited by state law. In an amended complaint filed in 1983, she alleged Wards engaged in a "pattern and practice" of excluding women from management positions in certain departments. Stephens sought certification of a class consisting of "women who, since 1978, were, are or will be qualified to hold a reserve department manager position or a management position above the level of department manager with defendant Montgomery Ward in its Oakland Super Metro District and the 29 California stores within the district, but have been denied the opportunity to do so because of their sex."

The statistical evidence of female underrepresentation in the management of "reserve" departments was the focal point of her argument that this case should proceed as a class action. The statistics presented show women to be significantly underrepresented in the management of "reserve" departments between 1978 and 1984.[1] Stephens summarized the importance of these statistics: "Throughout 29 stores over a period of 7 years, the pattern is clear: women are two-thirds of all sales employees, women are up to two-thirds of all managers outside the reserve departments, yet women average only 13.48% of reserve department managers."

On October 22, 1985, the court denied Stephens's motion for class certification. On January 31, 1986, this court stayed all proceedings in this

---

[1] Stephens presented the following statistics in support of her motion for class certification: During the years 1978 to 1984, the breakdown by sex of the entire staff was as follows:

| YEAR | PERCENT FEMALE | PERCENT MALE |
| --- | --- | --- |
| 1978 | 62.7 | 37.3 |
| 1979 | 63.2 | 36.8 |
| 1980 | 62.3 | 37.7 |
| 1981 | 64.7 | 35.3 |
| 1982 | 66.7 | 33.3 |
| 1983 | 66.1 | 33.9 |
| 1984 | 67.2 | 32.8 |

matter until it was determined whether the case should proceed as a class action or as an individual action.

■ Two requirements must be established as a predicate for bringing a class action under Code of Civil Procedure section 382. There must be an ascertainable class and there must be a well-defined community of interest in the questions of law and fact affecting the parties to be represented. (See *Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848, 864 [223 Cal.Rptr. 846].) The California Supreme Court has "suggested that trial courts, in the absence of controlling California authority, utilize the class action procedures of the federal rules." (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750].)

■ Preliminarily, Stephens insists the trial court's denial of class certification must be reversed because the court failed to specify its reasons for denying the motion. In support of this argument, Stephens relies on federal cases which require the court to make findings which reflect the reasons on which such a decision is based. (See, e.g., *Harriss* v. *Pan American World Airways, Inc.* (N.D.Cal. 1977) 74 F.R.D. 24, 35; *Price* v. *Lucky Stores, Inc.* (9th Cir. 1974) 501 F.2d 1177, 1179.) It was forcefully urged at oral argument that reliance on federal law is appropriate because there exists a "hiatus" in California law on whether such findings are required. (See *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

Contrary to Stephens's assertion, the procedure in California for requesting findings is well established. (See Code Civ. Proc., § 632.) Furthermore,

(fn. 1, contd.)
During this same time period, women were assigned as department managers as follows:

| YEAR | PERCENT WOMEN MANAGING Reserve Depts. | PERCENT WOMEN MANAGING Other Depts. |
| --- | --- | --- |
| 1978 | 12.5 | 67.8 |
| 1979 | 9.8 | 65.5 |
| 1980 | 13.7 | 69.9 |
| 1981 | 14.3 | 73.0 |
| 1982 | 13.0 | 65.3 |
| 1983 | 7.7 | 57.0 |
| 1984 | 22.6 | 59.4 |

there is no question but that Stephens failed to comply with the established procedure for formally requesting findings. This being the case, to reverse the trial court's order for failure to make findings would reward Stephens for her own inexplicable inaction. In any event, there exists clear authority in California that findings of fact and conclusions of law are not required to be made by the trial court in the denial of a class action even though the motion is based upon evidence and the resulting order is appealable. (*Gonzales* v. *Jones* (1981) 116 Cal.App.3d 978, 983, fn. 6 [171 Cal.Rptr. 567].)

■ "In reviewing the ruling of the trial court, we are guided by the principle that the showing required for certification of a class is within the trial court's discretion provided that correct criteria are employed." (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 361.) We note that at the certification stage the court is not to examine the merits of the case, i.e., to attempt to determine whether the claimed discrimination actually exists. (See *Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156, 177-178 [40 L.Ed.2d 732, 748-749, 94 S.Ct. 2140]; *Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699, 707 [109 Cal.Rptr. 254].) Our inquiry must be limited to whether Stephens carried her burden of establishing the prerequisites of a class action. (See *Baltimore Football Club, Inc.* v. *Superior Court* (1985) 171 Cal.App.3d 352, 361 [215 Cal.Rptr. 323].)

■ Employment discrimination, by its very nature, is often class discrimination and therefore well suited for a class action. (See *East Texas Motor Freight* v. *Rodriguez* (1977) 431 U.S. 395, 405 [52 L.Ed.2d 453, 463, 97 S.Ct. 1891]; *Gay* v. *Waiters' and Dairy Lunchmen's Union* (9th Cir. 1977) 549 F.2d 1330, 1333.) However, the United States Supreme Court's decision in *General Telephone Co. of Southwest* v. *Falcon* (1982) 457 U.S. 147 [72 L.Ed.2d 740, 102 S.Ct. 2364], instructs that the mere fact that the plaintiff is a member of an identifiable racial or minority group is not sufficient to confer standing to litigate all possible claims against an employer on their behalf. (*Id.,* at p. 159, fn. 15 [72 L.Ed.2d at p. 751].) In *Falcon,* the court refused to allow the plaintiff, who sought redress for discrimination in promotion, to be a class representative for those who alleged discrimination in hiring. It held that the plaintiff must be part of the class and possessed of the same interest and suffering from the same injury as the class members. The decision declares that the procedural requirements for certifying a class cannot be dispensed with simply because a case involves employment discrimination and that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis," that the procedural prerequisites for class certification have been satisfied. (*Id.,* at p. 161 [72 L.Ed.2d at pp. 752-753].)

## I

■ Wards has asserted that this lawsuit cannot be maintained as a class action because "the record strongly suggests there are no other members of the supposed class." In support of this assertion, Wards points to Stephens's inability at her deposition to identify other Wards employees who were denied promotional opportunities. Wards also focuses on the absence of declarations from other women who are aggrieved by Wards's promotional policies. Stephens insists that the existence of a bona fide class is demonstrated by the statistical evidence revealing that certain departments are predominantly managed by men, with the resulting inference that during the time the alleged discrimination occurred, "hundreds" of women had been denied the opportunity to seek and hold management positions in reserve departments. Stephens also relies on the EEOC's finding that Wards had discriminated against women "as a class" by denying them equal promotional opportunities.

A plaintiff may not merely speculate as to the existence of class members. (See, e.g., *Fleming* v. *Travenol Laboratories Inc.* (5th Cir. 1983) 707 F.2d 829, 832-833.) On the other hand, a plaintiff is not required, at this stage of the proceedings, to prove the existence and identity of class members. (See *Collins* v. *Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 71 [231 Cal.Rptr. 638]; *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 138 [191 Cal.Rptr. 849].) An observation made by the court in *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732], seems pertinent to the position taken by Wards: "Defendant apparently fails to distinguish between the necessity of establishing the existence of an ascertainable class and the necessity of identifying the individual members of such class as a prerequisite to a class suit. If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment."

It would be unreasonable now to require Stephens to identify, by name, potential class members. At this stage, it is sufficient that the class as defined is ascertainable and that there exists a well-defined community of interest in the questions of law and fact involved. (See, e.g., *Evans* v. *U.S. Pipe & Foundry Co.* (11th Cir. 1983) 696 F.2d 925, 930; *Williams* v. *New Orleans Steamship Ass'n.* (5th Cir. 1982) 673 F.2d 742, 755-756; *Bartelson* v. *Dean Witter & Co.* (E.D.Pa. 1980) 86 F.R.D. 657, 675-676.)

## II

■ Wards challenges the way the proposed class was defined for purposes of certification. Claiming the class definition was "artificially con-

structed," Wards notes it has no departmental structure which adheres to the "reserve-nonreserve[d]" categorization. Furthermore, Wards points to statistics demonstrating that when all departments are considered as a whole, women comprise over half of all department managers.

Claims alleging discrimination in only one segment of an employer's workforce are cognizable. (See, e.g., *Carpenter* v. *Stephen F. Austin State University* (5th Cir. 1983) 706 F.2d 608 [channelling Blacks and women into low level positions with no opportunity for advancement]; *Richardson* v. *Byrd* (5th Cir. 1983) 709 F.2d 1016, 1020 [assignment of all new female deputies to the jail and restrictions on their transfer to more desirable sections]; *Johnson* v. *Montgomery County Sheriff's Dept.* (M.D.Ala. 1983) 99 F.R.D. 562 [fixed number of females in a certain position].) The Supreme Court recognized this principle in *Teamsters* v. *United States* (1977) 431 U.S. 324 [52 L.Ed.2d 396, 97 S.Ct. 1843]. There, suit was brought on behalf of Blacks and Spanish-surnamed individuals claiming the minorities who were hired were relegated to lower-paying, less desirable positions than the positions which went to Whites. The plaintiffs' case consisted of powerful statistical evidence showing a gross disparity between the percentage of minorities in the company's workforce and those in the more desirable positions. (*Id.,* at p. 337 [52 L.Ed.2d at p. 416].) The court did not look to the overall picture of minorities within the company's employ to determine the validity of the claim. The plaintiffs were permitted to charge discrimination in one job classification only and to prove their case by offering statistical evidence relevant only to that job.

Therefore, we reject Wards's assertion that a proper class definition should have encompassed the overall percentage of women in management positions with Wards. Stephens alleged discrimination in several distinct job categories within Wards. She has distinguished department management positions within "reserve" departments from those in other departments by claiming "reserve" department managers receive higher pay and are more likely to be promoted to higher management. The class, as defined by Stephens, is sufficiently ascertainable.

## III

█ Wards asserts common issues affecting the class as a whole would not predominate over individual issues because each of its stores hires and promotes its own personnel, and promotion policies and major organizational changes have occurred during the time period covered by the complaint. In derogation of Wards's argument, Stephens claims she has produced sufficient facts indicating that Wards's employment policies are de-

veloped and overseen by a central administration and that those policies have a class-wide impact.

Wards places great weight on *Bradford* v. *Sears, Roebuck & Co.* (5th Cir. 1982) 673 F.2d 792, in support of its argument that the commonality requirement is not satisfied here. In that case, the court considered a request for certification of a class composed of Black employees and applicants in every Sears facility in Mississippi. Besides the conclusionary allegations in the pleadings, the only evidence produced on whether a company-wide policy of discrimination existed was the affidavit of Sears's assistant personnel director. The affidavit stated that Sears's organizational structure and personnel administration varied from store to store. The court found this "uncontroverted" affidavit belied the suggestion that a uniform policy or practice of discrimination existed. (*Id.*, at p. 796.)

By contrast, Stephens has come forward with statistical data and an analysis of the defendant's corporate structure that supports her allegation of centralized control over employment decisions. Stephens produced facts, primarily through the deposition testimony of Marvin Tangren, Wards's district personnel manager, which indicate that Wards's employment and promotional policies are developed and overseen by a central administration. For example, candidates for promotion are subject to a company-wide performance appraisal system. The entire review process is standardized, and every appraisal is based on the same factors for the same job throughout the company. The criteria for hiring management personnel are also standardized. The degree in which a local store can deviate from standardized procedure is relatively insignificant. Wage rates for each individual store are set and administered at the company's headquarters in Chicago and administered at the district level. Wards also maintains a company-wide personnel information system called "The People System." The data collected by this system is used to set affirmative action goals, which are set at company headquarters and monitored at the district level. Stephens has provided statistical proof that each store's individual hiring and promotional practices, whatever they may be, have manifested themselves in the same general fashion throughout the 29 California stores within the district. This evidence calls into serious question Wards's claim that each store functions independently of one another.

Stephens has presented sufficient evidence to show women were subjected to company-wide policies and practices which affected all within the proposed class. (See *Bartelson* v. *Dean Witter & Co., supra,* 86 F.R.D. at p. 667; *Karan* v. *Nabisco, Inc.* (W.D.Pa. 1978) 78 F.R.D. 388, 404-405.) The commonality requirement was satisfied.

## IV

■ Since Stephens was in fact promoted into a "reserve" department manager position twice, Wards questions whether her claims are typical of the class she seeks to represent. Stephens contends she can adequately represent the interests of the class because her present day exclusion from a "reserve" department management position stems from a general policy of discrimination which affects all other female employees.

In *East Texas Motor Freight* v. *Rodriguez, supra,* 431 U.S. 395, the court emphasized that a class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." (*Id.,* at p. 403[52 L.Ed.2d at p. 453], quoting *Schlesinger* v. *Reservists to Stop the War* (1974) 418 U.S. 208, 216 [41 L.Ed.2d 706, 715-716, 94 S.Ct. 2925].) In short, in order to be an adequate representative, plaintiff must show that her claims are typical of the claims of the class. (*Richmond* v. *Dart Industries, supra,* 29 Cal.3d at p. 470; *Trotsky* v. *Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 146 [121 Cal.Rptr. 637].)

Due to Stephens's employment history, we do not believe she would be an adequate representative for the class. Having been promoted to a "reserve" department manager position twice, Stephens is not an appropriate class representative for claims regarding the alleged reservation of these "reserve" department manager positions for men. The trial of her claims will necessarily focus on her promotion and subsequent removal from such a position. Such facts are not typical of the claims of the class. In summary, Stephens's experience at Wards is hardly typical of the widespread acts of discrimination she wishes to attack on behalf of the class.

Even though Stephens cannot suitably represent the class, she is not precluded from proceeding with her individual claim. (*Classen* v. *Weller* (1983) 145 Cal.App.3d 27, 48, fn. 13 [192 Cal.Rptr. 914].) In any event, she should be given "the opportunity to amend [her] complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative." (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 872; *Kagan* v. *Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 596 [200 Cal.Rptr. 38, 676 P.2d 1060].) The court may conclude that the action should be dismissed if a suitable class representative cannot be found. (*La Sala* v. *American Sav. & Loan Assn., supra,* at p. 872.)

## V

■ The ultimate question as to whether an action qualifies as a class action is "whether, given an ascertainable class, the issues which may be

jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225].) ■ We believe Stephens has introduced enough facts to support a prima facie allegation that a policy of sex discrimination, emanating from Wards's central administration, exists and limits the promotional opportunities of women employees. This showing sets forth common issues of law and fact which substantially predominate over individual issues. We have determined, however, that the interests of the class cannot be represented by plaintiff and the trial court may condition any future viability of the action on substitution of a proper representative.

The stay is vacated and the matter is remanded for further proceedings consistent with the views expressed herein.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied August 4, 1987, and respondents' petition for review by the Supreme Court was denied October 15, 1987.