118 Cal.Rptr.2d 792 (2002)
97 Cal.App.4th 1070
SAV-ON DRUG STORES, INC., Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Robert Rocher et al., Real Parties in Interest.
No. B152628.
Court of Appeal, Second District, Division Four.
April 4, 2002.
Review Granted July 17, 2002.
*793 Akin, Gump, Strauss, Hauer & Feld, W. Randolph Teslik, Joel M. Cohn, William A. Norris, Los Angeles, Rex Heinke, Beverly Hills, L. Rachel Helyar, Encino, and Sandra M. Lee for Petitioner.
Law Offices of Steven Drapkin and Steven Drapkin, Los Angeles, for Employers Group as Amicus Curiae on behalf of Petitioner.
No appearance for Respondent.
Righetti-Wynne, Matthew Righetti, and Edward J. Wynne, San Francisco; Daniels, Fine, Israel & Schonbuch, Scott A. Brooks, and Craig S. Momita, Los Angeles, for Real Parties in Interest.
Saperstein, Goldstein, Demchak & Bailer, David Borgen, and Laura L. Ho, Oakland, for Asian Pacific American Legal Center of Southern California, the Legal Aid Society of San Franciscothe Employment Law Center, La Raza Centro Legal, Inc., and the Women's Employment Rights ClinicGolden Gate University School of Law as Amici Curiae on behalf of Real Parties in Interest.
CHARLES S. VOGEL, P.J.

INTRODUCTION
Plaintiffs Robert Rocher and Connie Dahlin (plaintiffs) on behalf of themselves and others similarly situated brought this class action against defendant Sav-on Drug Stores, Inc. (defendant). Plaintiffs allege that defendant wrongfully failed to pay overtime wages to class members, consisting of current and former employees classified by defendant as operating managers (OM's) and assistant managers (AM's) of defendant's 300 retail stores and claimed by defendant to be managerial employees exempt from overtime wage laws. The trial court granted plaintiffs' motion for class certification. Defendant petitioned this court for a writ of mandate to compel the trial court to deny class certification. We issued an order to show cause.
We shall issue the writ directing the trial court to vacate its order granting class certification. We hold the trial court abused its discretion. The disputed issue in this case, whether the class members were exempt from overtime wage laws, involves individual fact questions that predominate over undisputed common issues, *794 rendering class action treatment inappropriate. In a later portion of this opinion we dispose of routine procedural issues regarding this writ proceeding.

LEGAL BACKGROUND

Exemption from Overtime Wage Requirements

The underlying merits involve whether the AM's and OM's should have been paid overtime wages. Defendant treated them as salaried managers exempt from the overtime wage laws. The period covered by the present complaint is April 1996 to April 2000. A wage order of the Industrial Welfare Commission relating to the mercantile industry, codified in title 8, California Code of Regulations section 11070, provided that the overtime requirements do not apply to "persons employed in administrative, executive, or professional capacities," defined as "engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment." (§ 11070, subd. 1(A)(1).) "Primarily" was defined as "more than one-half the employee's work time." (§ 11070, subd. 2(J).)
In Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 85 Cal.Rptr.2d 844, 978 P.2d 2, involving an analogous wage order of the Industrial Welfare Commission relating to outside salespersons, the California Supreme Court construed this quantitative test. The court held that in determining whether an individual employee is exempt, the first and foremost factor is the work actually performed by the employee; the amounts of time the employee spends on exempt and nonexempt work, together with the employer's realistic expectations and the realistic requirements of the job, must be considered. (Id. at pp. 802-803 & fn. 5, 85 Cal.Rptr.2d 844, 978 P.2d 2.)
The parties do not dispute that Ramirez states the applicable test to determine whether an individual employee is exempt from the overtime requirements. Parenthetically, we note that the Industrial Welfare Commission subsequently adopted the Ramirez test, in addition to other specific criteria, in its current wage order determining exemptions in the mercantile industry. (Industrial Welfare Commission wage order No. 7-2001 Regulating Wages, Hours and Working Conditions in the Mercantile Industry, effective January 1, 2001; see Lab.Code, § 515.) As before, primarily means more than one-half the employee's work time.

Class Action Requirements
A class action must meet certain prerequisites. Among these, the questions of law or fact that are common to all members of the class must predominate over the questions of law or fact that are individual to each member. Despite the existence of some common questions of law or fact, a class action may not be maintained if each member's right to recover depends on separate facts applicable only to that individual. (City of San Jose v. Superior Court (1974) 12 Cal.3d 447, 459, 115 Cal.Rptr. 797, 525 P.2d 701; Gerhard v. Stephens (1968) 68 Cal.2d 864, 913, 69 Cal.Rptr. 612, 442 P.2d 692; Weaver v. Pasadena Tournament of Roses (1948) 32 Cal.2d 833, 839, 198 P.2d 514; McCullah v. Southern Cal. Gas Co. (2000) 82 Cal. App.4th 495, 501-502, 98 Cal.Rptr.2d 208; Kennedy v. Baxter Healthcare Corp. (1996) 43 Cal.App.4th 799, 809, 50 Cal. Rptr.2d 736; Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1233-1234, 271 Cal.Rptr. 72; Brown v. Regents of University of California (1984) 151 Cal.App.3d 982, 988-989, 198 Cal.Rptr. 916.)
The plaintiff proponent of class certification bears the burden to establish that the common questions predominate. *795 (Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 913, 103 Cal. Rptr.2d 320, 15 P.3d 1071; City of San Jose v. Superior Court, supra, 12 Cal.3d at p. 460, 115 Cal.Rptr. 797, 525 P.2d 701.) A trial court abuses its discretion by certifying a class action if numerous and substantial questions relating to each member individually must be litigated and these predominate over the common questions that may be jointly tried. (Washington Mutual Bank v. Superior Court, supra, 24 Cal.4th at pp. 913-914, 103 Cal.Rptr.2d 320, 15 P.3d 1071; City of San Jose v. Superior Court, supra, 12 Cal.3d at p. 458, 115 Cal.Rptr. 797, 525 P.2d 701.)
The issue in dispute in this writ proceeding is whether the common issues or the individual issues predominate.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiffs proposed two subclasses, (1) all current and former salaried employees classified by defendant as OM's like plaintiff Rocher who worked overtime hours but were not paid overtime compensation, and (2) all current and former salaried employees classified by defendant as AM's like plaintiff Dahlin who worked overtime hours but were not paid overtime compensation. The parties estimated there are between 600 and 1,400 members of the class, based on defendant's having operated approximately 300 retail stores during the relevant time period. Plaintiffs alleged the members of the class "were improperly and illegally mis-classified by [defendant] as `exempt' managerial employees when, in fact, they were `non-exempt,' nonmanagerial employees according to California law." Plaintiffs alleged, "The duties and responsibilities of the salaried Operating Managers and Assistant Managers are virtually identical from region to region, area to area, store to store, and, employee to employee. Further, any variations in job activities between the different individuals are legally insignificant to the issues presented by this action since the central facts remain, to wit, plaintiffs and the class members performed non-exempt work in excess of 50% of the time in their workday, that their workday routinely included work in excess of 40 hours per week and/or 8 hours per work day and they have not been paid overtime compensation for their work under California law."
In their motion for class certification plaintiffs contended defendant's store operations were "standardized" and that class certification was appropriate because defendant considered all AM's and OM's, as a class, to be exempt employees.
In its opposition to the motion defendant contended that whether any member of the class was exempt or nonexempt depended primarily on the tasks performed and the amount of time spent on those tasks. Defendant contended, "the range of activities performed by managers and the amount of time spent in such activities vary significantly from manager to manager based on multiple factors such as store location, size, physical layout, sales volume, hours of operation, management structure and style, experience level of the individual manager, and the number of hourly employees requiring supervision.... The evidence shows that it is impossible to make any meaningful generalizations regarding the employment circumstances of defendant's managers. Thus, contrary to plaintiffs' position, the evidence demonstrates that the individual and unique factual inquiries required to determine whether defendant's managers have been properly classified as exempt" precluded determination of that issue on a class-wide basis. As for plaintiffs argument that a class action was proper because defendant treated all AM's and OM's as exempt, defendant contended, "the mere fact that defendant has treated its OMs and AMs as exempt, based *796 on its reasonable expectation that managers in those positions would be performing primarily managerial duties, is not the equivalent to a finding that the legality of that determination can also be made on a class-wide basis."
In their reply memorandum plaintiffs continued to argue, "It is the Defendant who created this class when it unilaterally decided that every class member was exempt .... [¶] [Wjhether or not the class created by Defendant was properly classified is a predominant common issue that can be addressed on a class-wide basis.... [I]t is Defendant, and, more precisely, its class-wide policy that is on trialnot the individual class members."
Defendant contended that the declaration of its human resources manager and the declarations of 51 of its AM's and OM's demonstrated significant variations from store to store and manager to manager in the tasks performed and amount of time spent on those tasks. Plaintiffs contended the variations were not significant and that at trial plaintiffs would be able to show by valid "representative" or "statistical" evidence that as a class, the AM's and OM's spend more than 50 percent of their time on nonexempt tasks.
After considering the parties' papers and exhibits supporting and opposing class certification including the parties' issue statements under Los Angeles Superior Court rule 15.18, the trial court certified the class. The court did not specifically discuss defendant's contention that the individual issues predominate over the common issues. The court simply stated it granted the motion for class certification. The court's written order, prepared by plaintiffs' counsel for the court, included a recital that plaintiffs established by a preponderance of evidence that common questions of fact and law predominate.
On defendant's petition for an extraordinary writ to review the trial court's order granting class certification, we granted an order to show cause. Relief by extraordinary writ is appropriate to prevent a burdensome trial in a massive class action. (See City of Glendale v. Superior Court (1993) 18 Cal.App.4th 1768, 1776-1777, 23 Cal.Rptr.2d 305; TJX Companies, Inc. v. Superior Court (2001) 87 Cal. App.4th 747, 753, 104 Cal.Rptr.2d 810.)

PROPRIETY OF CLASS ACTION
Plaintiffs' basic contention is that the propriety of class certification follows obviously from defendant's having treated all its OM's and AM's as exempt employees. We disagree. Even if plaintiffs could show that some OM's and AM's spend more than 50 percent of their time on nonexempt tasks, it would not follow that all of them do. The fact that defendant has a common policy of treating all its OM's and AM's as exempt does not necessarily mean the common policy, when challenged in court, is either right as to all members of the class or wrong as to all members of the class.
Defendant is entitled to defend against plaintiffs' complaint. A defendant may defeat class action certification by showing that the defenses to be offered raise individual issues specific to each member of the class that predominate over the issues in common. (Gerhard v. Stephens, supra, 68 Cal.2d 864, 913, 69 Cal. Rptr. 612, 442 P.2d 692 [in claims regarding mineral rights, not only would each plaintiff member need to establish his or her individual proof of title from predecessors, but "the defendants would undoubtedly raise the defense of abandonment of the mineral interests as to each alleged member of the class, which ... creates a factual issue as to the individual owner's intent"]; Kennedy v. Baxter Healthcare Corp., supra, 43 Cal.App.4th 799, 811, 50 Cal.Rptr.2d 736 [as to class of users of *797 latex gloves, "[djefenses will require individual litigation of claims. Health care workers may have been using latex gloves for a period of time exceeding the statute of limitations, thus requiring an examination of the viability of each plaintiffs claim. Questions will arise concerning assumption of the risk and comparative negligence"]; Block v. Major League Baseball (1998) 65 Cal.App.4th 538, 544, 76 Cal.Rptr.2d 567 [as to right of publicity of class of baseball players, "affirmative defenses of consent, waiver, or estoppel" would not be common for all members. "The fact that the trial court would be obligated to evaluate each of these defenses for each member of the class[] weighed heavily against certification"].)
In this case, defendant showed that the proposed class action involved operations at approximately 300 different stores and an estimated 1,400 OM's and AM's. Defendant showed there were wide variations in the types of stores and consequently wide variations in the types of activities and amounts of time per workweek spent on different types of activities by the OM's and AM's in those stores.
Brad Adams declared: He is defendant's human resources manager for the Southern California Northern Area Drug Division and in that capacity is familiar with the personnel structure of defendant's operations. Between 1996 and 2000 defendant had between 248 and 322 retail stores in Southern California. Stores are located in broadly diversified communities. They range from stand-alone stores to express stores in a shopping mall to combination stores inside a grocery store. They range in size from 5,700 square feet to 50,000 square feet. Sales volume varies widely among stores, which affects how much time a manager spends regulating inventory, meeting with vendors, and merchandising. Stores range in hours of operation from 24 hours 7 days per week to 11 hours 5 days per week, which affect the types of activities performed by a manager. Defendant had three store-level management classifications: general manager (GM), operating manager (OM), and assistant manager (AM). Large stores might employ a GM, one or two OM's, and one or two AM's, whereas small stores or combination stores might employ only one GM and either one OM or one AM. Most stores also employ hourly-paid supervisors. The number of supervisors varies from store to store depending on the GM's staffing preferences, the hours of operation, and the sales volume. The number of hourly employees to be supervised range from 8 to 80. During each shift the salaried managers supervise between 3 and 35 hourly employees. The number of hourly employees and the composition of the employee base affect the OM's or AM's supervisory duties. OM's and AM's with many employees spend virtually all their time delegating and supervising, whereas AM's with only a few employees may spend more time on nonmanagerial duties. An AM or OM in a store with high turnover or a large percentage of part-time employees may spend significantly more time interviewing, hiring, training, and closely supervising employees. The management style and experience level of GM's, who exercise broad discretion in assigning duties to their management teams, differ from store to store. As a result, there can be significant variations among the duties of AM's and OM's. Another variation is that some GM's are also market managers (MM's) responsible for several stores; such GM's spend less time in "their" store, which may result in greater responsibility for an OM or AM. Defendant publishes corporate policies and procedures to provide guidance to store-level managers, but these are not rigid prescriptions, only guidance to assist managers in exercising their discretion and independent judgment based on the *798 circumstances of the particular store. Defendant publishes job descriptions for AM's and OM's providing guidance on the general nature and level of work expected, but these are not exhaustive.
Next, defendant submitted 51 declarations from different AM's and OM's describing in detail the nature of their work. Defendant offered a summary to show that the 51 declarations exhibited significant variations from store to store and manager to manager depending on variables such as the GM's management style, experience level, and status as an MM; the number of OM's and AM's; the experience level of the AM or OM; and the store location, type, size, and sales volume.
By this showing defendant demonstrated there would be individualized fact issues as to each member of the class in order to determine whether that member spent more than one-half of his or her workweek on activities constituting exempt work, which is the primary test of the exemption from overtime compensation.
Plaintiffs failed to sustain their burden to show, to the contrary, that the operations in defendant's stores and the amounts of time spent by OM's and AM's on exempt or nonexempt activities were so uniform as to be appropriate for class-wide determination.
Plaintiffs contend they established the necessary commonality of issues through defendant's own company policies, practices, and procedures. Plaintiffs cite the following examples: (1) defendant issued job descriptions for the titles of AM's and OM's describing their functions, and as discussed ante, defendant treated all its AM's and OM's as exempt, based on defendant's "reasonable expectations" that AM's and OM's primarily perform exempt tasks; (2) defendant used the same form for conducting performance reviews of "management associates"; (3) defendant had compensation programs applying class-wide to AM's and OM's; (4) defendant had classwide training programs for AM's and OM's designed to ensure a consistent message; (5) defendant had a minimum workweek of 48 hours for all exempt members of management; (6) defendant had no "compliance program" to train employees on the differences between exempt and nonexempt work activities under California law; and (7) defendant admitted it lacked knowledge of, and had performed no studies or surveys to determine, the actual hours worked by AM's and OM's or the amounts of time spent by them on exempt and nonexempt tasks.
These factors do not prove plaintiffs' point. They tend only to prove issues that will not be in dispute in the underlying trial of the merits. Defendant does not dispute that it considers all the AM's and OM's to be exempt from overtime wage requirements. The issue in dispute is how the AM's and OM's spend their time. The policies, practices, and procedures cited by plaintiffs do not address that issue nor show that the way the AM's and OM's spend their time is so standard or uniform as to be triable on a class-wide basis.
Plaintiffs next claim they "submitted evidence of the actual tasks performed by class members through [defendant's] own admissions" in answers to interrogatories. The answers cited do not support plaintiffs' position. The interrogatories requested defendant to describe nonexempt tasks performed by OM's and AM's. Defendant answered that the OM's and AM's do not routinely perform nonexempt tasks, and, further and specifically, "The types of non-exempt tasks, if any, ... vary significantly from employee to employee and from store to store based on a wide variety of operational factors."
Plaintiffs next claim to have offered "statistical evidence" to support their assertion the amount of time spent on exempt *799 and nonexempt activities may be determined class-wide. They analogize to Stephens v. Montgomery Ward (1987) 193 Cal.App.3d 411, 238 Cal.Rptr. 602. Stephens was a gender discrimination case, in which the class plaintiff showed by statistics that women were underrepresented in management positions. Combined with evidence that promotional decisions were centrally controlled, this was held sufficient to show that the common issues predominated, as against the defendant's claim that the facts relating to promotional decisions varied from store to store. (Id. at pp. 421, 423, 238 Cal.Rptr. 602.) Plaintiffs' "evidence" in the present case was nothing of the kind. This "evidence" was merely plaintiffs' summary of defendant's 51 declarations, summarizing what percentage of time each declarant allocated between what the declarant characterized as managerial versus nonmanagerial tasks (e.g., "70% Managerial 30% Non-Managerial"). This was not at all like disparate impact statistics in a discrimination case. If anything, plaintiffs' summary merely confirmed defendant's point that the allocations of time spent on exempt and nonexempt tasks varied considerably from store to store and employee to employee.
Finally, plaintiffs claim several declarations and answers to interrogatories support their position that the activities of the AM's and OM's are sufficiently uniform to make a class-wide determination.
The answers to interrogatories of the named plaintiffs Rocher and Dahlin merely describe their work and do not address whether the work of other OM's and AM's is uniformly similar. Similarly a declaration of Mario Gardner, a former AM, addresses only his work.
Benissa Clifford declared that for the past 12 years she has been a GM at several of defendant's stores and has trained AM's. In her opinion AM's spend "most of their time" in mundane nonmanagerial work and "hardly ever" do "anything which can be considered intellectual, managerial, creative or training." Based on her experience, "the practices and conduct described herein were typical of Sav-on Drug stores in California." Stephen Aldag declared that he has worked at 10 of defendant's stores from 1967 through 1997, and since 1983 as a GM. He based his opinion on his experience at different stores as a GM, and on working with different AM's who were frequently rotated among stores, by which he came to know their work and the operations of others of defendant's stores. In his opinion, AM's "perform little, if any[,] managerial work." Further, "The type of work performed by Assistant Managers does not vary by store. Each Sav-on store was and is operated in the same manner, and requires the same essential work, as one might expect in a chain of retail stores. Therefore, the actual work performed by Assistant Managers on a daily basis was virtually identical in Sav-on stores, and remains so." Finally, Richard Featherstone declared he has been an AM and an OM in his 9 years of experience at 11 of defendant's stores. In his experience working with AM's, "they did little managerial work, if any at all." "[B]y far the majority of their time (more than 50%) was spent performing non-managerial tasks." In the same words as Aldag, Featherstone stated the type of work performed by AM's does not vary from store to store.
These declarations are not determinative. A trial court order granting or denying class certification is reviewed by an appellate court under an abuse of discretion standard. (City of San Jose v. Superior Court, supra, 12 Cal.3d 447, 453, 458, 115 Cal.Rptr. 797, 525 P.2d 701 [trial court abused its discretion by granting class certification]; binder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435, 97 Cal. *800 Rptr.2d 179, 2 P.3d 27 [trial court did not abuse its "great discretion" by denying class certification].) Although deferential to the trial court's ruling, appellate courts utilize their own reasoning in determining whether individual issues would arise in the litigation and predominate over common issues. (See Gerhard v. Stephens, supra, 68 Cal.2d 864, 913, 69 Cal.Rptr. 612, 442 P.2d 692 [appellate court added reasons relating to defenses that would be raised, in addition to trial court's reasons concerning issues individual to each plaintiffs title claim]; accord, hinder v. Thrifty Oil Co., supra, 23 Cal.4th at p. 436, 97 Cal.Rptr.2d 179, 2 P.3d 27 [trial court's reasoning must be examined].) Appellate courts insist that trial courts carefully weigh the respective benefits and burdens and deny class certification when each member's right to recover depends on facts individual to the member's case. (City of San Jose v. Superior Court, supra, 12 Cal.3d at p. 459, 115 Cal.Rptr. 797, 525 P.2d 701.)
We conclude based on all the circumstances of this case that the trial court abused its discretion in certifying this class action. This case involves approximately 300 stores and 1,400 AM's and OM's. Defendant showed that the stores and the circumstances under which the AM's and OM's operate are not identical but rather involve significant variations affecting their tasks and the amounts of time spent on those tasks. The evidence relating to the disputed issue in the litigation, whether the members of the class spend more than 50 percent of their workweek on nonexempt tasks, would involve separate facts applicable only to each member of the class, rendering a class action inappropriate. The trial court did not offer reasons why the common issues predominate, and its conclusion that they do was unreasonable based on the whole record. The mere existence of two declarations opining that all the work of all the AM's at all of defendant's stores is identical is not conclusive and does not compel upholding the trial court's ruling. Plaintiffs' evidence to show that the work is so uniform as to justify class action litigation addressed irrelevant issues or was otherwise insubstantial, conclusory, or incredible.
Defendant does not contend, nor do we hold, that a class action can never be appropriate for "managerial" employees claiming to have been wrongly treated as exempt from overtime wage requirements. In another case, evidence might exist justifying a reasonable inference that the hours spent by "managers" on nonexempt tasks are so uniform as to be triable on a class basis. But, in this case, with so many stores and managers operating under different conditions, plaintiffs failed to sustain their burden to show that common issues predominate over individual issues.
We are aware of several California appellate cases in which overtime entitlements were adjudicated in a class action. In most of these the propriety of a class action was not a disputed issue addressed in the appellate opinion. (Morillion v. Royal Packing Co. (2000) 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 [whether agricultural employees were entitled to compensation for time spent traveling to and from the fields on employer-provided buses; on demurrer, court addressed the merits, not the propriety of class action]; Madera Police Officers Assn. v. City of Madera (1984) 36 Cal.3d 403, 204 Cal.Rptr. 422, 682 P.2d 1087 [whether police officers were entitled to overtime for meal periods when they were required to remain available to be called away for emergencies; trial on merits conducted; on appeal, merits decided with no discussion of propriety of class action]; Bell v. Farmers Ins. Exchange (2001) 87 Cal.App.4th 805, 105 Cal. Rptr.2d 59 [whether claims representatives were exempt from overtime wage *801 requirements as administrative employees; summary adjudication of issues reviewed on the merits, with no discussion of propriety of class action].) TJX Companies, Inc. v. Superior Court, supra, 87 Cal.App.4th 747, 104 Cal.Rptr.2d 810, is more closely in point but also failed to decide the issue of propriety of the class action. Similar to this case, it was a class action by assistant managers of 150 retail stores in two store chains, T.J. Maxx and Marshalls. On demurrer, the defendant argued, like defendant here, that how the individual assistant managers spent their work time involved individual issues of fact rendering a class action inappropriate. Neither the trial court nor the appellate court decided that issue. The writ proceeding involved a narrow preliminary point: whether the defendant was entitled to oral argument in the trial court on its demurrer. Noting that the defendant could be subjected to burdensome class action discovery, the appellate court held the trial court should have allowed oral argument on the defendant's demurrer to the class action allegations. (Id. at p. 753,104 Cal.Rptr.2d 810.)
Los Angeles Fire & Police Protective League v. City of Los Angeles (1972) 23 Cal.App.3d 67, 99 Cal.Rptr. 908 was a forerunner of Madera Police Officers Assn. v. City of Madera, supra, 36 Cal.3d 403, 204 Cal.Rptr. 422, 682 P.2d 1087, on the issue whether police officers were entitled to compensation amounting to overtime for meal periods during which they were required to be available for duty. On appeal from a judgment on the merits, the defendant argued the case was not properly tried as a class action. The court rejected this contention because all members of the class were subjected to the same restrictions, rendering this a common question of fact and the merits a common question of law. (Los Angeles Fire & Police Protective League v. City of Los Angeles, supra, at pp. 73-74, 99 Cal.Rptr. 908.) That case is distinguishable from this case in which defendant showed the work of all the AM's and OM's is not uniform or identical.
The parties and amici also attempt to bring to our attention, by requests for judicial notice, a number of decisions by California trial courts on certification of class actions in assertedly similar cases. We decline to consider trial court decisions, which are not treated as precedents by appellate courts. (Santa Ana Hospital Medical Center v. Belshe (1997) 56 Cal.App.4th 819, 831, 65 Cal. Rptr.2d 754; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 922, p. 960.) The parties and amici have also cited various published federal cases. They are distinguishable; none is so closely in point as to warrant discussion.
This case bears no resemblance to the other California appellate decisions on which plaintiffs specifically rely. Vasquez v. Superior Court (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 was decided on demurrer, and the court assumed the truth of allegations that representations to different consumers made by salespersons of freezers and food contracts were based on recitations of a standard sales monologue contained in a training book and sales manual. (Id. at pp. 810-811, 94 Cal.Rptr. 796, 484 P.2d 964.) On this assumption it was reasonable to conclude the representations were identical as to each class member. In Reyes v. Board of Supervisors (1987) 196 Cal.App.3d 1263, 242 Cal.Rptr. 339, the dispute concerned a regulation that denied aid to county general relief recipients without distinguishing between willful and nonwillful failure to obtain work. It could reasonably be concluded that the defendant's conduct was uniform based on the regulation itself and standard practices followed in making sanctioning decisions. (Id. at p. 1279, 242 Cal.Rptr. 339.) As discussed ante, Stephens v. Montgomery Ward, supra, 193 Cal.App.3d *802 411, 238 Cal.Rptr. 602, is distinguishable because the plaintiff there provided statistical evidence of disparate impact and centralized control of promotional decisions.
Finally, plaintiffs urge "public policy" supports this class action. Their argument is unpersuasive. Policies favoring class actions do not apply unless common issues predominate over individual issues. Absent this necessary community of interest, class actions are not favored, partly because they may preclude a defendant from defending each individual claim to its fullest. (City of San Jose v. Superior Court, supra, 12 Cal.3d 447, 458, 459, 115 Cal.Rptr. 797, 525 P.2d 701.) Plaintiffs contend class actions are favored where numerous parties suffer injury of insufficient size to warrant individual action; they further contend employees deprived of overtime compensation cannot afford counsel or risk taking action individually for fear of retaliation. These arguments are unpersuasive here, because the individual claims of AM's and OM's could run to thousands of dollars and a prevailing plaintiff would be entitled to attorney fees. (Lab.Code, § 1194.)

PROCEDURAL RULINGS

Plaintiffs' Motion to Summarily Deny Petition
After we granted the order to show cause, plaintiffs moved that we instead summarily deny defendant's petition on the ground that defendant's exhibits in support of its petition failed to include documents that plaintiffs contend were required by rule 56(c), California Rules of Court. Plaintiffs submitted their own three-volume set of the omitted documents, plaintiffs' exhibits A through S.
We are not persuaded that defendants failed to include exhibits required by rule 56. But in any event, the record now includes the previously omitted documents, and we decline to summarily deny the petition. (City of Santa Cruz v. Superior Court (1988) 198 Cal.App.3d 999, 1004, fn. 1, 244 Cal.Rptr. 105; Soltani-Rastegar v. Superior Court (1989) 208 Cal.App.3d 424, 428, 256 Cal.Rptr. 255.)

Plaintiffs' Objections to Defendant's Declaration Evidence
Plaintiffs filed objections in the trial court to the admissibility of the Brad Adams declaration and the 51 employee declarations offered by defendant. Defendant filed opposition in the trial court supporting admissibility. The trial court did not expressly rule on any of plaintiffs' objections, although the court's written order prepared by plaintiffs' counsel recites that it considered all admissible evidence.
In their return in this court and in their motion to summarily deny the petition on the ground defendant failed to include necessary papers in defendant's exhibits, plaintiffs contend expressly or impliedly that the declarations were inadmissible and hence may not be relied upon by defendant.
These arguments are unavailable to plaintiffs, because plaintiffs' evidentiary objections were waived by their failure to secure a ruling on them in the trial court. (City of Long Beach v. Farmers & Merchants Bank (2000) 81 Cal.App.4th 780, 783-784, 97 Cal.Rptr.2d 140; Sambrano v. City of San Diego (2001) 94 Cal.App.4th 225, 234-238, 114 Cal.Rptr.2d 151 [criticizing Biljac Associates v. First Interstate Bank (1990) 218 Cal.App.3d 1410, 1419-1420, 267 Cal.Rptr. 819, cited by plaintiffs].)

Defendant's Objection to Considering the Aldag and Featherstone Declarations
In its opposition to plaintiffs' motion to summarily deny the petition and its reply brief, defendant suggests the Aldag and *803 Featherstone declarations need not be considered, asserting plaintiffs did not actually rely on them below nor did the trial court take judicial notice of their contents; rather, defendant contends, they were merely exhibits in a related case that was brought to the trial court's attention for the limited purpose of determining whether it should be coordinated with this case. Plaintiffs contend to the contrary that the Aldag and Featherstone declarations may have been considered by the trial court on the merits of class certification.
We need not resolve this particular dispute. In our discussion of the propriety of class action certification, ante, we took into account the Aldag and Featherstone declarations but nevertheless concluded a class action is inappropriate. In light of the result, defendant suffers no prejudice from our considering the declarations.

Requests for Judicial Notice
Concurrently with filing its amicus brief supporting defendant, amicus Employers Group filed a request for judicial notice (RJN). Plaintiffs filed objections to Employers Group's RJN, and Employers Group filed a reply. Plaintiffs' objections included a counter-RJN. Employers Group's RJN includes some administrative materials (the validity, admissibility, relevance, and weight of which is also contested by plaintiffs) but primarily consists of portions of California trial court proceedings in other cases apparently denying class certification in situations Employers Group contends are analogous to this case. Employers Group asserts this was made necessary by plaintiffs' request of the trial court to take judicial notice of portions of California trial court proceedings in other cases apparently granting class certification in situations plaintiffs claim are analogous to this case. But in their objections plaintiffs state the trial court did not consider the cases in their RJN, and assert we should not consider the cases in Employers Group's RJN. In their papers Employers Group and plaintiffs ultimately agree that rulings of trial courts in other cases have no precedential value. (Santa Ana Hospital Medical Center v. Belshe, supra, 56 Cal.App.4th 819, 831, 65 Cal. Rptr.2d 754.) Accordingly, Employers Group's RJN and plaintiffs' RJN are denied. We rely on the usual sources of precedent, reported California appellate cases, to support our determination on the propriety of class action certification, ante.

DISPOSITION
The order to show cause, having served its purpose, is discharged. Let a peremptory writ issue commanding respondent trial court to vacate its order granting class certification and enter a new and different order denying class certification. Costs are awarded to defendant.
We concur: HASTINGS and CURRY, JJ.